IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| SANGRIA MUELLER, | ) | |
| JENNIFER REEVES, | ) | |
| AMANDA BRANCH, and | ) | |
| JAIME LAWSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 04-4251-CV-C-NKL |
| | ) | |
| COLE COUNTY, MISSOURI, | ) | |
| GARY KEMPKER, | ) | |
| JOHN HEMEYER, | ) | |
| RUSS BEMBOOM, | ) | |
| JOSE PERDOMO, and | ) | |
| TREY PROPES, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendants Cole County, Gary Kempker ("Kempker")[1], John Hemeyer ("Hemeyer"), and Russ Bemboom ("Bemboom") have submitted two separate motions for summary judgment.

In their first Motion for Summary Judgment, Defendants request judgment on Count I of Plaintiffs' Complaint in their official capacity [Doc. # 105]. For the reasons set forth below, the Court grants Defendants' Motion.

---

[1]Kempker was substituted as a party in this case for the late George Brooks ("Brooks"), who passed away in January 2005. *See* Doc. # 84. Although Kempker is procedurally substituted for Books, the Court will be referring to the conduct of Brooks because he was the sheriff at the time of the events giving rise to this lawsuit.

1

In their second Motion for Summary Judgment, Defendants request judgment on all four counts of Plaintiffs' Complaint in their individual capacity [Doc. # 107]. For the reasons set forth below, the Court grants Defendants' Motion.

## I. Background

### A. The Parties

This lawsuit was commenced by four former inmates of the jail in Cole County, Missouri. The four Plaintiffs are Sangria Mueller ("Mueller"), Jennifer Reeves ("Reeves"), Amanda Branch ("Branch"), and Jaime Lawson ("Lawson"). Plaintiffs allege that Defendants Trey Propes ("Propes") and Jose Perdomo ("Perdomo") subjected them to unlawful sexual contact while they were incarcerated at the jail. Propes and Perdomo were jailers who oversaw Plaintiffs. Propes and Perdomo have not moved for summary judgment in either of the Motions that are currently pending before the Court.

Brooks, Hemeyer, and Bemboom supervised Propes and Perdomo while they were employed at the Cole County Jail. Hemeyer was the former Cole County Sheriff, and Brooks and Bemboom were in supervisory positions over Propes and Perdomo. Plaintiffs do not allege that Brooks, Hemeyer, or Bemboom personally participated in the unlawful conduct; instead, they allege that these Defendants acted with deliberate indifference to the alleged misconduct by Propes and Perdomo.

### B. Pending Claims

Plaintiffs pursue Count I against Cole County and against Brooks, Hemeyer and Bemboom in their individual and official capacities. This claim is the subject of

Defendants' first Motion for Summary Judgment [Doc. # 105]. Plaintiffs pursue Counts II-IV against Brooks, Hemeyer and Bemboom in their individual capacities only. These claims are the subject of Defendants'[2] second Motion for Summary Judgment [Doc. # 107].

### C. Undisputed Facts[3]

#### 1. *Mueller*

Mueller was incarcerated at the Cole County Jail at various times from 1998 until December 2003. Mueller testified she was arrested and processed into the Cole County Jail on August 18, 2003. Mueller alleges that on that day Perdomo was watching her change into her green jumpsuit and that he demanded that she perform oral sex on him and she did. Mueller also alleges that Propes engaged in several instances of sexual misconduct between June and October 2003. Mueller alleges that Propes grabbed her buttocks, fondled her breasts, and kissed her against her will.

Mueller conceded that she never complained to any official of the Cole County Jail or any of the Defendants regarding Perdomo's and Propes's conduct. Mueller stated that the first time she told anyone about the alleged incidents involving Perdomo and Propes was when her attorney contacted her about filing this lawsuit. Mueller does

---

[2]Plaintiffs also pursue claims against Defendants Propes and Perdomo. However, those claims are not at issue. Therefore, the Court's reference to Defendants only includes Brooks, Hemeyer, Bemboom and Cole County.

[3]In their Opposition, Plaintiffs do not contradict or oppose the factual allegations averred by Defendants with respect to Plaintiffs' claims. Therefore, for the purposes of summary judgment, the facts are undisputed.

3

not have any reason to believe that anyone else told the Defendants about Perdomo's and Propes's conduct.

### 2. *Reeves*

Like Mueller, Reeves alleges that Propes kissed her and fondled her against her will on March 20, 2002. Reeves alleges that the conduct occurred while Propes was transporting her to the Cole County Courthouse for a court appearance. Reeves conceded that she never complained to any official of the Cole County Jail or any of the Defendants regarding Perdomo's and Propes's conduct. Reeves does not have any reason to believe that anyone else told the Defendants about Perdomo's and Propes's conduct.

### 3. *Branch*

Branch testified that Propes accosted her and fondled her against her will in December 2003. Branch also testified that Propes engaged her in sexual discussions in October 2003.

Additionally, Branch testified that she would take her clothes off and perform "strip teases" or "floor shows" for other inmates, Propes, and Perdomo. Branch stated that she would undress to get cigarettes from other inmates and that Perdomo occasionally requested that she take her clothes off. Branch also stated that another female inmate took her clothes off while Propes and Perdomo watched.

Branch testified that she told Bemboom and a few other jailers about the alleged incidents involving Propes and Perdomo. No further incidents occurred after Bemboom was told. Branch stated that Hemeyer eventually found out about the alleged conduct.

4

### 4. *Lawson*

Lawson alleges that Perdomo engaged in sexual misconduct with her in September 2002 on one occasion. Lawson conceded that she never complained to any official of the Cole County Jail or any of the Defendants regarding Perdomo's and Propes's conduct. Lawson does not have any reason to believe that anyone else told the Defendants about Perdomo's conduct.

### C. Prior Allegations of Misconduct[4]

#### 1. *Propes*

##### a. Becky Forbes ("Forbes")

On March 8, 1996, Forbes submitted a written statement alleging that she had performed oral sex on Propes at his request in February 1996. Forbes was incarcerated in the Cole County Jail in February 1996. Bemboom and other personnel from the Cole County Jail investigated Forbes's allegation and interviewed two other inmates. Other inmates were identified as having knowledge of the alleged incident, but it is unclear whether they were interviewed during the investigation. There is no evidence that Propes was interviewed regarding Forbes's allegation, although he did submit a reply to Forbes's complaint wherein he denied her allegation. Propes was never formally counseled or disciplined as a result of the complaint. Forbes voluntarily withdrew her complaint one

---

[4] Plaintiffs have submitted the affidavit of Natalie Vaughn wherein she alleges that she complained about Propes and Perdomo to Bemboom in 2002. However, Vaughn was never disclosed by Plaintiffs as a potential witness nor have Defendants had an opportunity to depose Vaughn to test the veracity of her statements. Therefore, the Court will not consider Vaughn's affidavit in its Order.

week after she submitted it.

### b. Tonya Sessler ("Sessler")

Sessler was one of the two inmates at the Cole County Jail who was interviewed during the investigation into Forbes's complaint. In her interview with Bemboom, Sessler said that Propes had taken her into a holding cell and engaged in sexual intercourse with her. Sessler identified another inmate who would have knowledge of her allegation, but that inmate was never interviewed. Sessler declined to provide a written statement and in a subsequent written statement she declined to pursue her allegation against Propes. Defendants did not conduct any additional investigation regarding Sessler's complaint.

### c. Sandra Jamie Bruso ("Bruso")

Bruso did not file a complaint against Propes. Instead, another inmate named Tambri Runk ("Runk") submitted a statement in July 1996 indicating that Bruso had engaged in oral sex with Propes for cigarettes. Cole County Jail officials did not conduct an investigation into Runk's statement nor did they interview Bruso. However, they did obtain statements from their own personnel about Bruso's dislike of Propes and her possible motivations for making the allegation.

### 2. *Perdomo*

#### a. Claire LeMaster ("LeMaster")

6

Sometime after February 2002,[5] jailers Stacey Hickman ("Hickman") and Samantha Conn ("Conn") reported an incident involving Perdomo and a female inmate that they observed on the Jail's closed circuit television. Hickman and Conn testified they saw Perdomo lift the camera and then stand near the female inmate for about thirty seconds. Hickman believed the female inmate was LeMaster. Hickman and Conn did not see inappropriate conduct between Perdomo and LeMaster--just that they were standing near each other and that Perdomo had lifted the camera.

Conn reported the incident to Gary Hill ("Hill"), a sergeant at the Cole County Jail. Hill interviewed Hickman and she recounted the same version of events as Conn. Hill reported the incident to Reggie Jankowski ("Jankowski"), his supervisor, who in turn reported the incident to Brooks. Hill also relayed the information to Brooks after Plaintiffs filed their Complaint. Jankowski does not believe that Brooks ever followed up on the reported incident.

Conn also testified about another time when she saw LeMaster and Perdomo standing near each other in the laundry room. Conn did not report this incident to any of her superiors.

Regarding the two occasions she saw Perdomo standing near LeMaster, Conn testified that nothing seemed to be happening against LeMaster's will and that LeMaster

---

[5]It is unclear from the record when this alleged incident occurred. However, Conn testified that she began working at the Cole County Jail in February 2002. Thus, the alleged incident must have occurred after February 2002.

did not appear to be frightened, agitated, or embarrassed about whatever transpired. Conn was not sure whether any inappropriate conduct occurred--only that Perdomo and LeMaster were standing near each other.

### b. Brenda Silvey ("Silvey")

In April 2002, Silvey contacted a lieutenant at the Cole County Jail and told him that Perdomo had "grabbed her backside and told her that she had a nice ass" as she was leaving the facility to post bond. Silvey was a former inmate at the Cole County Jail. Officials did investigate Silvey's allegation and the investigation revealed that Perdomo and Silvey had a contentious history of calling each other names. Perdomo denied the allegation and he was not disciplined by Cole County Jail officials.

### 3. *Other Jailers*

In 1992 and 1995, Hemeyer testified that two jailers who had allegedly engaged in sexual conduct with inmates voluntarily resigned when they were confronted with the allegations. Neither incident involved Propes or Perdomo.

### D. Defendants' Motions

In their first Motion for Summary Judgment, Cole County, Brooks (Kempker), Hemeyer and Bemboom, in their official capacities, move for summary judgment on Plaintiffs' section 1983 claim (Count I). [Doc. # 105]

In their second Motion for Summary Judgment, Brooks (Kempker), Hemeyer and Bemboom, in their individual capacities, move for summary judgment on Plaintiffs' section 1983 claim (Count I) and Plaintiffs' state law claims (Counts II-IV) [Doc. # 107].

The Court finds for the reasons set forth below that both Motions should be granted.

## II. Discussion

### A. Section 1983 Claim (Count I)

#### 1. *Official Capacities*

To subject Cole County to section 1983 liability, Plaintiffs must show that the County had a "policy or custom of failing to act upon prior similar complaints of unconstitutional conduct, which caused the constitutional injury at issue." *Rogers v. City of Little Rock, Arkansas*, 152 F.3d 790, 798-99 (8th Cir. 1998) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996)). "There must exist a prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law." *Andrews*, 98 F.3d at 1075 (quoting *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978)). The term "official policy" encompasses "a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

If a plaintiff can demonstrate such a pattern of misconduct, then the plaintiff must demonstrate that the governmental entity's policymaking officials were "deliberately indifferent or [they] tacitly authorized the misconduct after receiving notice of it." *Ware v. Jackson County, Missouri*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Jane Doe A*, 901 F.2d at 646). To prove deliberate indifference, prior complaints about the purported

9

misconduct must have had merit.  *Rogers*, 152 F.3d at 799.  Deliberate indifference "is a difficult burden for a plaintiff to meet . . . ."  *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (citations omitted).

Assuming a plaintiff can establish both the existence of a pattern of misconduct and deliberate indifference, the plaintiff must also demonstrate that the "custom was the moving force behind the constitutional violation," *Ware*, 150 F.3d at 880, *i.e.*, that the custom caused the constitutional injury at issue.

The foregoing framework applies equally to governmental officials who are sued under section 1983 in their official capacities, because a suit against city officials in their official capacities is just another form of a suit against the city.  *Rogers*, 152 F.3d at 800.

In the instant case, the Court will assume for purposes of this motion that Plaintiffs can demonstrate that a widespread pattern of constitutional violations had occurred and that those violations were the "moving force" behind Plaintiffs' alleged injuries.  *Ware*, 150 F.3d at 880.  For purposes of this Order, the Court will focus only on whether the Defendants acted with deliberate indifference.

First, the Plaintiffs have not presented any evidence that they, or anyone else, told the Defendants about Propes's and Perdomo's interaction with the Plaintiffs.  Therefore, the Court will examine only whether the prior allegations of sexual misconduct against Propes and Perdomo were sufficient to put the Defendants on notice that there was a substantial risk that female inmates in the Cole County Jail, including the Plaintiffs, would be subject to sexual misconduct by Propes and Perdomo.

10

### a. Propes

Regarding Propes, the only complaints that could have put the Defendants on notice regarding his misconduct were the complaints regarding Forbes, Sessler, and Bruso, all of which occurred in 1996--approximately seven years prior to the alleged misconduct involving Plaintiffs. Forbes and Sessler refused to pursue their claims of misconduct. Forbes withdrew her complaint approximately one week after submitting it. Sessler initially stated that she had intercourse with Propes, but she refused to pursue her complaint because she did not want to get involved. In an interview with William F. Smith ("Smith"), Sessler later denied the allegation and stated, "We had talked about [Propes] having his way with the girls, but I haven't seen him do it." Sessler also stated that Forbes's claims against Propes were false. The Defendants also obtained other statements from other Jail employees and Propes regarding Forbes's and Sessler's allegations. Because Forbes and Sessler withdrew their allegations and there was no other corroborating evidence, the Defendants did not discipline Propes.

Regarding the allegation of Propes's misconduct against Bruso, that complaint was never submitted by Bruso. Instead, Runk was the complaining witness, but she had never seen Propes engage in misconduct toward Bruso. The Defendants interviewed Runk and obtained statements from other inmates regarding Bruso and her conduct toward Propes and the other guards. The Defendants could not substantiate Runk's allegation about Bruso because of the lack of corroborating evidence.

All of the complaints against Propes occurred in 1996, which was approximately

11

seven years before Propes's alleged misconduct toward Plaintiffs. Moreover, none of the complaints were proven, even though the Defendants investigated all of the complaints. Because of the scant evidence against Propes and the length of time between the incidents and Plaintiffs' alleged damages, a reasonable jury could not find that the Defendants were deliberately indifferent to a substantial risk of harm to the Plaintiffs by Propes.

### b. Perdomo

Only two alleged instances of misconduct were asserted against Perdomo. The first incident involving Perdomo and LeMaster was inconclusive. LeMaster never complained about any conduct by Perdomo; instead, Conn and Hickman reported what they considered to be odd behavior by Perdomo. Conn and Hickman did not witness misconduct--only Perdomo and LeMaster standing near each other after Perdomo lifted the camera to another angle.

The second alleged incident involved Silvey and Perdomo and was also inconclusive. The Defendants investigated Silvey's claim, but they did not find it credible given the history of animosity between Silvey and Perdomo. Silvey and Perdomo had frequently exchanged verbal barbs where they would call each other names and yell at each other. Independent witnesses corroborated this history and the Defendants did not believe Silvey's claim against Perdomo. The evidence in the record does not indicate that the Defendants ignored material evidence regarding her allegation or that their conclusion was not supported.

Given these two complaints against Perdomo, a reasonable jury could not find that

12

Case 2:04-cv-04251-NKL   Document 124   Filed 06/29/05   Page 12 of 18

the Defendants acted with deliberate indifference. Both of the complaints were inconclusive. Although Perdomo's conduct with LeMaster regarding changing the angle of the camera was odd, it could not have put the Defendants on notice about his subsequent misconduct, particularly because there was no evidence of misconduct between Perdomo and LeMaster. Similarly, Silvey's unsubstantiated claims against Perdomo about him grabbing her on her buttocks could not have put the Defendants on notice that Perdomo would subsequently engage in the graphic sexual acts that Plaintiffs allege. Neither claim is even similar to the factual allegations averred by Plaintiffs, and both claims were inconclusive and unsubstantiated.

In support of their claim against Cole County and the Defendants, Plaintiffs cite *Ware v. Jackson County*, 150 F.3d 873. In *Ware*, the plaintiff was raped by a security guard at a county detention facility and she successfully pursued her claim against the county. The evidence in *Ware* demonstrated that internal investigators had investigated and substantiated previous allegations of rape and sexual misconduct by the guard. The internal investigators had also concluded that the guard had lied to them during the course of their investigation. Despite the substantiation of an inmate's previous complaint of rape and sexual misconduct, the managing officer of the facility did not punish the guard in any way. The evidence demonstrated that a widespread pattern of sexual misconduct existed at the facility and that the managing officer refused to punish security guards, even though the internal investigators had substantiated numerous and repeated incidents of sexual misconduct. On appeal, the court held that the plaintiff had sufficiently

13

established a section 1983 violation and the court affirmed the jury's verdict in favor of the plaintiff.

Other cases from the Eighth Circuit hold that substantiated complaints of misconduct can give rise to a claim of deliberate indifference. *See Parrish v. Luckie*, 963 F.2d 201 (8th Cir. 1992) (affirming jury verdict in favor of plaintiff where police officer who raped plaintiff had at least five previous complaints of misconduct filed against him); *Harris v. City of Pagedale*, 821 F.2d 499 (8th Cir. 1987) (affirming jury verdict in favor of plaintiff where police officer who raped plaintiff had at least four previous substantiated complaints of misconduct filed against him).

Without recounting the graphic details of *Parrish*, *Harris*, and *Ware*, the Court finds that those cases involved substantially more egregious facts and more opportunities for notice to the supervising parties than the instant dispute. In each of those cases, the officer who engaged in the wrongful sexual conduct had repeated complaints against him and at least some of those complaints had been substantiated with little or no recourse taken against the officer. In this case, none of the complaints against Propes or Perdomo were ever substantiated.

The Eighth Circuit has affirmed summary judgment in disputes where past allegations of misconduct against an officer had merit. For example, in *Rogers*, an officer who followed the plaintiff to her home and raped her had previously been suspended for wrongfully having intercourse with a fellow cadet at this training academy, but the court held that this was insufficient to put the officer's superiors on notice about the conduct

14

alleged by the Plaintiffs. 152 F.3d 790. In *Rogers*, there were also several sexual harassment claims against the officer, but the claims had not been substantiated; thus, they were held not to have put the officer's superiors on notice of risk of serious harm to the public.

Similarly, in *Andrews*, an officer who raped a minor girl had two previous complaints against him for breaking into the home of another minor girl and making sexually suggestive comments to a female driver he had detained. Both of the complaints were substantiated, but the court stated: "These two instances of misconduct indicate that [the officer's superior] was aware that some problem existed with [the officer], but they do not indicate a 'persistent and widespread' pattern of misconduct that amounts to a city custom or policy of overlooking police misconduct." 98 F.3d at 1076 (quoting *Monell*, 436 U.S. at 691).

All of the cases outlined above involved more opportunities for notice than the instant dispute. Given that none of the complaints against Propes or Perdomo were substantiated and that the Defendants conducted some type of investigation, a reasonable jury could not find that the Defendants acted with deliberate indifference. Although the Defendants' investigations could have been substantially more thorough, there is no indicia that they were a "facade to cover the violent behavioral patterns of police officers," particularly where the complaining parties refused to cooperate or there was no independent corroborating evidence. *Rogers*, 152 F.3d at 799 (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 974 (3rd Cir. 1996)). Although Plaintiffs may be able to

15

demonstrate that the investigations were executed incompetently, investigatory deficiencies that are the result of negligence cannot satisfy the standard of deliberate indifference. *Ervin v. Busby*, 992 F.2d 147, 151 (8th Cir. 1993) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)); *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993); *Andrews*, 98 F.3d at 1077 (citations omitted). Negligence or incompetence is a matter for the citizens of Cole County to address, not this Court.

Accordingly, the Court finds that Plaintiffs cannot establish that Cole County or the Defendants acted with deliberate indifference regarding these constitutional violations occurring at the Cole County Jail.

### 2. *Individual Capacities*

Plaintiffs also purport to sue the Defendants in their individual capacities, although Plaintiffs' Complaint fails to specifically set forth this claim. Normally, Plaintiffs' failure to explicitly sue the Defendants in their individual capacities would be fatal to their claim. *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (without clear statement that officials are being sued in personal capacities, complaint is interpreted as including only official-capacity claims). Nonetheless, even assuming Plaintiffs had properly pleaded their claim for individual liability against these Defendants, their claim would fail.

To be individually liable for a section 1983 violation, the government official must (1) receive notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrate deliberate indifference to or tacit authorization of the offensive acts; (3) fail to take remedial action; and (4) the failure to take remedial action must proximately cause

16

the plaintiff's injury. *Andrews*, 98 F.3d at 1078 (citing *Jane Doe A*, 901 F.2d at 645); *Rogers*, 152 F.3d at 800.

For the reasons set forth above, Plaintiffs' section 1983 claim against these Defendants in their individual capacities must fail because a reasonable jury could not find that the Defendants acted with deliberate indifference to a substantial risk that Perdomo and Propes would violate the constitutional rights of the Plaintiffs. Defendants are granted summary judgment on this claim.

### B. State Law Claims (Counts II-IV) (Individual Capacities)

The Court has already granted judgment in favor of the Defendants on Counts II-IV of Plaintiffs' Complaint in their official capacities. *See* Doc. # 67. The Defendants now move for summary judgment on Counts II-IV in their individual capacities. Plaintiffs do not appear to oppose the Defendants' Motion because they claim they are not pursuing state law claims against the Defendants. The Defendants' Motion is therefore granted.

### C. Mueller's Claims

The Defendants also move for summary judgment on Mueller's claims arguing that she has failed to exhaust her administrative remedies. Given the stage of these proceedings, this Motion is denied as moot.

## III. Conclusion

Accordingly, it is hereby

(1) ORDERED that Defendants' Motion for Summary Judgment [Doc. # 105]

is GRANTED, and

>    (2)    ORDERED that Defendants' Motion for Summary Judgment [Doc. # 107]

is GRANTED.

>                                                s/ Nanette K. Laughrey
>                                                NANETTE K. LAUGHREY
>                                                United States District Judge

DATE:  June 29, 2005
Jefferson City, Missouri

18